47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Ohm LINDOW, Defendant-Appellant.
 No. 93-1734.
 United States Court of Appeals, Sixth Circuit.
 Feb. 10, 1995.
 
 Before: LIVELY, JONES and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Robert Ohm Lindow, appeals his conviction and sentence on two counts of possessing a listed chemical with intent to manufacture methamphetamine, a controlled substance, in violation of 21 U.S.C. Secs. 802(33), 802(34)(M), 802(35)(C) and 841(d)(1). He raises multiple issues for our review, none of which we find to merit relief. However, the government has confessed error with regard to Lindow's conviction on one of the two counts, 21 U.S.C. Sec. 802(34)(M), and that conviction must be set aside.
 
 
 2
 On November 2, 1990, the defendant, a disbarred attorney residing in rural Michigan, ordered eight kilograms of methylamine from a Boston chemical company. Lindow asked that the bill be sent to his residence, but gave as the shipping address a nearby tool and die company where a friend of his worked.
 
 
 3
 Because methylamine is a necessary component in the production of methamphetamine, the Boston chemical company reported Lindow's order to the Boston office of the DEA. Further investigation by DEA agents in Michigan revealed that the Lindow residence had recently consumed ten times more electricity than the average for the surrounding area. The DEA arranged a controlled delivery of the methylamine to the Lindow's home. The delivery was made on November 15. The woman who accepted delivery, presumably the defendant's wife, initially paid for the methylamine with a check. She immediately changed her mind, however, and paid with cash.
 
 
 4
 On November 27, 1990, Lindow ordered eight liters of benzyl chloride from a chemical company in Chicago. Because benzyl chloride is also a necessary component in the manufacture of methamphetamine, the Chicago chemical company notified the Chicago office of the DEA of the order. On November 29, the company erroneously shipped benzoyl chloride to Lindow. On December 7, the defendant drove to Chicago in his wife's car and exchanged the benzoyl chloride for benzyl chloride. On December 30, he called the Chicago chemical company to complain about the quality of the benzyl chloride. The company agreed to send a replacement order.
 
 
 5
 The DEA arranged a controlled delivery of the replacement order of benzyl chloride. On January 22, 1991, after Lindow took delivery, the DEA executed a search warrant of his residence. In addition to all of the facts set forth above, the search warrant affidavit contained the following information: Due to the telltale odors which they produce, clandestine drug laboratories are frequently located in rural areas. They also typically consume inordinately large amounts of electricity. Additionally, individuals operating such laboratories commonly employ legitimate businesses as a front for deliveries and spread their chemical orders over large geographical areas in order to not arouse suspicion. Benzyl chloride, methylamine, and magnesium metal shavings are the primary ingredients in the manufacture of methamphetamine. Magnesium metal shavings are a common by-product of tool and die operations. Further, according to the affiant, benzyl chloride and methylamine have no application in tool and die operations.
 
 
 6
 On June 19, 1991, Lindow was indicted on one count of attempting to manufacture methamphetamine, one count of possessing methylamine with intent to manufacture methamphetamine, and one count of possessing benzyl chloride with intent to manufacture methamphetamine. Shortly before the indictment was handed down, Lindow and his wife fled to Ann Arbor, where they lived under assumed names for over a year. On November 2, 1992, the defendant was arrested in Ann Arbor and taken into custody.
 
 
 7
 On November 5, 1992, in his first court appearance, Lindow requested appointed counsel. The court appointed Jeffrey O'Hara. On December 16, 1992, at the defendant's request, O'Hara filed a motion to withdraw as counsel, which the court granted on December 22. On that same date, the court appointed Daniel Gravelyn to replace O'Hara. On February 24, 1993, at the final pretrial conference, the defendant opted to proceed pro se, but the court ordered Gravelyn to act as "stand-by" counsel.
 
 
 8
 On February 17, 1993, after filing various other motions, the defendant requested an adjournment, which the court denied on February 26. On that same date, Lindow filed a motion for reconsideration of his motion for adjournment, which the court orally denied on the first day of the trial. Trial began on March 2, 1993. On March 11, the jury acquitted the defendant of count one (attempted manufacture of methamphetamine), but convicted him on the other two counts (possession of two listed chemicals, benzyl chloride and methylamine, with intent to manufacture methamphetamine). The court later sentenced Lindow to two concurrent prison terms of 96 months, followed by three years of supervised release. The sentence was based upon a total offense level of 28 (including two points for obstruction of justice) and a criminal history category of I. Additionally, the court imposed a $15,000 fine and a $100 special assessment.
 
 
 9
 The defendant argues on appeal that his conviction on count two should be set aside on the basis of "lenity" and "strict construction." Actually, the conviction on count two, for possession of methylamine, must be set aside on ex post facto grounds. As the government points out, methylamine was added to the list of prohibited precursor chemicals, 21 U.S.C. Sec. 802(34), effective February 27, 1991. The defendant was charged, however, with possession of methylamine on January 22, 1991. Because its possession was not a criminal offense on that date, Lindow's conviction on that count violates the Ex Post Facto Clause and must be vacated and dismissed with prejudice.
 
 
 10
 The defendant next assigns error to the district court's order denying his motion to suppress. We have reviewed the affidavit submitted to the issuing magistrate by an agent of the DEA and find that it contains ample information on which to base a finding of probable cause. We reject as unpersuasive the defendant's argument that the warrant was invalid because the affiant failed to advise the magistrate that the precursor chemicals described in the affidavit "also have many innocent uses."
 
 
 11
 Nor do we find an abuse of discretion in connection with the district court's decision to deny the defendant's motions for adjournment, made shortly before trial was scheduled to begin. The ruling was supported by fact and was legally correct, under the standards set out by this court in United States v. Medina, 992 F.2d 573 (6th Cir. 1993), and the provisions of 21 U.S.C. Sec. 3161, the Speedy Trial Act. Like the district judge, we find it curious that the defendant asked repeatedly for a continuance but, at the same time, refused to waive his right to a speedy trial.
 
 
 12
 The defendant next challenges the testimony of the government's expert witness, who testified that the two listed chemicals found in Lindow's possession were ingredients in the production of methamphetamine. What Lindow characterizes as "perjured testimony," however, appears instead to be merely a difference of expert opinion, which was properly resolved by the jury's verdict. Moreover, we find no merit to the defendant's claim that testimony by one of the experts and certain comments made by the Assistant United States Attorney "regarding intent" violated Rules 701 and 704(b) of the Federal Rules of Evidence because they "went to the ultimate issue" for the jury. The testimony in question concerned chemical formulas written in the defendant's handwriting and whether those formulas, if followed, would produce methamphetamine. Contrary to the defendant's argument on appeal, the information elicited from the expert witness was not speculative, was clearly helpful to the jury, and did not impermissibly "invade the jury's province."
 
 
 13
 The defendant next claims that the district court's application of USSG Sec. 2D1.11 to determine his sentence violated the Ex Post Facto Clause. Section 2D1.11, which sets the punishment for the unlawful possession of listed chemicals, became effective on November 1, 1991. The indictment charging the defendant with possession of benzyl chloride states the date of the offense as January 22, 1991, more than nine months before the effective date of Sec. 2D1.11. Pursuant to 18 U.S.C. Sec. 3553 and U.S.S.G. Sec. 1B1.11, a court is to apply the guideline provisions in effect at the time of sentencing unless doing so would result in a sentence greater than that sentence that would result from use of the provisions applicable at the time the offense was committed. Thus, the court below correctly applied Sec. 2D1.11 unless the provision applicable on January 22, 1991, would have resulted in a lesser sentence.
 
 
 14
 It is undisputed that on January 22, 1991, the defendant possessed eight liters, which is equivalent to eight kilograms, of benzyl chloride. Under Sec. 2D1.11's Chemical Quantity Table, possession of at least eight, but less than 20, kilograms of benzyl chloride results in a base offense level of 26 and a sentencing range of 63-78 months. This was the base offense level applied by the district court.
 
 
 15
 The guideline in use when calculating sentences for the possession of listed chemicals prior to the enactment of Sec. 2D1.11 was Sec. 2D1.1. See United States v. Kingston, 922 F.2d 1234, 1236-37 (6th Cir. 1990), cert. denied, 111 S.Ct. 2054 (1991). In Kingston, we held that the defendant in such a case should "be sentenced according to his intent." Id. at 1238. Thus, Lindow would be subject to sentencing according to the quantity of methamphetamine that would have been produced had he succeeded in manufacturing methamphetamine. See id. at 1237. The defendant and the government both agree on this point. However, they disagree about the amount of methamphetamine that could have been manufactured based on the chemicals in Lindow's possession.
 
 
 16
 The defendant, relying upon the testimony of his expert witness, asserts that no methamphetamine could have been produced, because the methylamine he received from the chemical company was in an aqueous 40% solution and not pure methylamine. Under Sec. 2D1.1, this would result in a base offense level of 12. We note, however, that because the defendant's conviction on the methylamine charge has been set aside, his argument on this point, even if it could be sustained scientifically, is moot. Moreover, an argument of factual impossibility with regard to the methylamine has no bearing on his sentencing in connection with his conviction of possession of benzyl chloride with intent to manufacture methamphetamine.
 
 
 17
 The government, relying on the testimony of its expert witness, claims that approximately five kilograms of methamphetamine could be produced from four liters of benzyl chloride. The expert witness arrived at this conclusion using molecular weight to arrive at a theoretical yield. Thus, according to the government, the eight liters of benzyl chloride ordered by Lindow could have produced ten kilograms of methamphetamine, resulting, under Sec. 2D1.1, in a base offense level of 38 with a sentencing range of 235-293 months. However, the statutory maximum for this offense is 10 years, or 120 months. Thus, the government contends that no ex post facto violation occurred here because the sentence required under Sec. 2D1.1 results in a level 38, a higher sentence than the defendant actually received under Sec. 2D1.11 (level 26).
 
 
 18
 The district judge accredited the testimony of the government's expert witness and, in an obvious effort to err on the side of caution, found that the defendants could have produced five to six kilograms of methamphetamine, based on the quantity of benzyl chloride he possessed. Under USSG Sec. 2D1.1, possession of at least three but less than ten kilograms of methamphetamine results in a base offense level of 38. Because the resulting penalty under Sec. 2D1.1 is higher than that under Sec. 2D1.11, no ex post facto violation occurred in the application of Sec. 2D1.1 to determine Lindow's sentence.
 
 
 19
 Moreover, we reject as legally erroneous the defendant's contention that he should have been sentenced under the guidelines pertaining to an attempt to commit an offense, Sec. 2X1.1(b)(1), or those pertaining to possession of a controlled substance, Sec. 2D2.1. Lindow was acquitted of attempt to manufacture methamphetamine, as charged in count one of the indictment, and he was not charged in the other two counts with possession of a controlled substance, but with possession of listed chemicals with the intent to manufacture a controlled substance. Neither Sec. 2X1.1(b)(1) nor Sec. 2D2.1 is applicable in this case.
 
 
 20
 Nor do we find error in the district court's decision to increase the defendant's base offense level by two points for obstruction of justice, pursuant to Sec. 3C1.1. The district judge did so based on what he considered to be blatant and egregious perjury by the defendant at trial, specifically his testimony that he had purchased the chemicals in question in order to produce a red dye for the mortar in a new house that he and his wife were building at the time. We find no abuse of discretion here, when measured by the standards of review set out in United States v. Medina, 992 F.2d 573, 591 (6th Cir. 1993). The district judge made the specific, independent findings required by United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993), and concluded that Lindow had perjured himself in a deliberate attempt to mislead the jury. The findings are not clearly erroneous, and we therefore sustain the two-level upward adjustment.
 
 
 21
 We are unable to address the remaining three issues, all of which have been raised for the first time on appeal and are therefore not reviewable. Lindow's contention that he was denied the effective assistance of counsel, for example, cannot be reviewed in the absence of a record documenting the specifics of his complaint, which concern his own conduct of his case and that of attorney Gravelyn. There was no hearing on this matter in the district court, and the only information we have before us comes from the allegations contained in Lindow's brief. Two other points were pressed on the court as "supplemental issues" in a pro se brief tendered for filing after the defendant's reply brief was filed -- clearly too late to make them reviewable on appeal. See Wright v. Holbrook, 794 F.2d 1152, 1156 (6th Cir. 1986).
 
 
 22
 Finally, we reject as unsupported the defendant's contention that his convictions should be set aside because he was denied a fair trial "due to cumulative error." Ironically, the only error meriting relief in this case was the ex post facto matter brought to our attention by the government. It requires that we set aside the defendant's conviction on count two, for possession of methylamine with the intent to manufacture methamphetamine. Hence, that part of the district court's judgment is REVERSED and the charge in count two is DISMISSED with prejudice. The remainder of the judgment, finding the defendant guilty of the offense charged in count three i.e. possession of benzyl chloride with the intent to manufacture methamphetamine, is AFFIRMED. The district court's sentencing order is MODIFIED to show a reduction in the special assessment from $100 to $50. The fine of $15,000 is the minimum fine for the guideline range; it was assessed in the aggregate and not tied to individual counts, and it is therefore AFFIRMED, in toto.